**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**1:11 cr 14**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MEMORANDUM AND** |
| **Vs.** | ) | **RECOMMENDATION** |
| | ) | |
| **WILLIAM LEE PEOPLES, II,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court upon Defendant's "Motion to Suppress Evidence" (#20). The Government filed its "Government's Response to Defendant's Motion to Suppress" (#24), to which Defendant filed his reply (#28). Defendant also filed a document entitled "Partial Withdrawal of Motion to Suppress" (#29). The undersigned conducted a hearing and heard evidence from Defendant and the arguments of counsel. Having carefully considered the evidence and the briefs and arguments of counsel, the Court enters the following findings, conclusions and recommendations.

## FINDINGS AND CONCLUSIONS

**I.    Procedural Background**

Defendant is charged in a two-count Bill of Indictment. In count one Defendant

is alleged to have, on or about September 9, 2010, knowingly and intentionally manufactured at least 100 marijuana plants in violation of 21 U.S.C. § 841(a)(1). In count two it is alleged that on the same date Defendant possessed marijuana with intent to distribute that substance in violation of the same statute. Defendant filed his "Motion to Suppress Evidence" (#20) on March 27, 2011. The government filed its response (#24) on April 7, 2011. Defendant filed a reply (#28) on April 13, 2011. The undersigned entered an Order (#27) setting a hearing in regard to the motion for April 18, 2011. On April 16, 2011, Defendant filed a document entitled "Partial Withdrawal of Motion to Suppress" (#29). In this document, defendant withdrew from the Court's consideration all issues except the issue of whether or not the search warrant issued in this case was fatally defective because it did not accurately describe the place or premises to be searched.

## II.    Factual Background

At the hearing, Defendant called as his sole witness Det. Tyler Trantham, who is employed by the Town of Waynesville Police Department. Trantham has been employed as a law enforcement officer for the last seven years. On or about September 8, 2010, Trantham prepared an Application for Search Warrant and a Search Warrant in which Trantham, requested permission to search a residence of the Defendant. A copy of the Application for Search Warrant and the Search Warrant,

consisting of fourteen pages, was introduced into evidence by Defendant as Defendant's Exhibit 1. In the Application for Search Warrant Trantham submitted what is entitled: "Probable Cause Affidavit  The Applicant Swears to the Following Facts to Establish Probable Cause for the Issuance of a Search Warrant." (D. Exhibit 1, pp. 7-14, attachment 5)  In that portion of the Application for the Search Warrant, Trantham avers that the following events occurred:

> During the week of August 16th, 2010, a reliable confidential informant made a purchase of marijuana from William Lee Peoples from the residence located at 61 East Marshall Street in Waynesville NC. The informant and the vehicle were searched before and after the purchase. Three surveillance teams including five officers followed the informant from a predetermined meeting location to the location at 61 East Marshall Street, Waynesville NC. The surveillance team had audio contact with the informant and William Peoples during this purchase. After the purchase was made, the informant was followed back to the predetermined meeting location by the Surveillance Teams. The informant immediately turned the marijuana purchased over to me and was searched again. The informant's vehicle was also searched again. The results of the post purchase search of the informant and vehicle revealed no additional controlled substances.

> During the debriefing, the informant stated that Peoples was in possession of a partial brick of marijuana the size of a softball. The informant stated that Peoples weighed out the amount purchased using digital scales. According to the informant this transaction took place in the kitchen area of the residence. While in the kitchen area Peoples pulled out the brick of marijuana at which time he pulled off a portion and weighed same using digital scales. After the transaction was complete Peoples placed the remaining marijuana in a drawer in the kitchen. The informant also stated that there were two other male subjects present at the residence during this time. The informant did not know one of the subjects name but identified the other male subject by

the first name of "Gary".

During the week of August 24th 2010, a reliable confidential informant made a purchase of marijuana from a while male named "Gary". On this date the confidential informant made contact with William Lee Peoples II at his residence located at 61 East Marshall Street in Waynesville NC. Peoples told the informant that he would send someone to meet the informant to sale the marijuana. Peoples expressed his concern about his home being watched by the police and that he would have someone meet the informant away from the residence.

The informant and the vehicle were searched before and after the purchase. Two surveillance teams including four officers followed the informant from a predetermined meeting location to the location near the Waynesville Rec. Park on West Marshall Street, Waynesville N.C. Upon arriving at this location the confidential informant made contact with Peoples over the phone. Peoples told the informant that he was sending someone to the informant's location. That subject would be driving a moped. A short time later a red moped arrived driven by "Gary". "Gary" then got into the vehicle with the CI and the transaction was made. "Gary" then left on the red moped and left the area.

After the purchase was made, the informant was followed back to the predetermined meeting location by the Surveillance Teams. The informant immediately turned the Marijuana purchased over to me and was searched again. The informant's vehicle was also searched again. The results of the post purchase search of the informant and vehicle revealed no additional controlled substances.

During the debriefing, the informant stated that "Gary" got into the vehicle with the informant and the transaction was made. "Gary" handed the informant the marijuana and then the informant handed "Gary" the money. According to the informant "Gary" has been present at Peoples residence before. It should also be noted that the red moped that "Gary" was driving on this date was seen at Peoples residence at 61 East Marshall Street prior to this operation.

In the past 48 hours a reliable confidential informant made a purchase of

marijuana from William Lee Peoples II from the residence located at 61 East Marshall Street in Waynesville NC. The informant and the vehicle were searched before and after the purchase. Three surveillance teams including five officers followed the informant from a predetermined meeting location to the location at 61 East Marshall Street, Waynesville N.C. The surveillance team had audio contact with the informant and William Peoples during this purchase. After the purchase was made, the informant was followed back to the predetermined meeting location by the Surveillance Teams.

The informant immediately turned the marijuana purchased over to me and was searched again. The informant's vehicle was also searched again. The results of the post purchase search of the informant and vehicle revealed no additional substances.

During the debriefing the informant stated that Peoples was in possession of a partial brick of marijuana the size of a volleyball. According to the informant the marijuana was in a plastic grocery bag inside a larger trash bag. Consistent with the first purchase made from Peoples, he pulled a portion off of the brick of marijuana and weighed same using digital scales. He then placed the remaining marijuana back into a drawer. The informant also stated that the white male named 'Gary" was at the residence at this time.

During all three operations Peoples has offered both "reg" or regular marijuana and "hydro" marijuana. The price of "hydro" marijuana is substantially more compared to what Peoples calls the regular marijuana. During all three operations the informant has purchased the regular. Hydro or hydroponic grown marijuana is typically grown in a controlled or indoor environment.

It should be noted that in the past twelve months information has been gathered by the narcotics unit at the Waynesville Police Department in reference to Peoples' in the manufacture of marijuana. Dating back to September of 2009 information was provided that detailed Peoples involvement in the manufacture of marijuana at his residence. This information stated that Peoples was utilizing an out building located on his property to manufacture marijuana indoors. From my training an

experience I know and have worked other cases where hydro marijuana is grown indoors. During the first operation Peoples spoke about his involvement when he told the informant that he believed someone had called the police because he was growing "out back".

It should also be noted that in the past twelve months information has been gathered that detailed other avenues that Peoples was using to obtain marijuana. This information, from separate sources as well as the informant stated that Peoples makes frequent trips to Florida and brings back large quantities of marijuana in "bricks". From my training and experience I know that the "bricks" that have been described are compressed and weigh several pounds. During these operations the partial bricks that have been described and the marijuana obtained from Peoples appears to have come from a compressed brick of marijuana.

It is respectfully requested that a search warrant be issued for the residence, vehicles, out buildings, and curtilage of 61 East Marshall Street, Waynesville, N.C. to recover and seize any and all controlled substances and items pertaining to illegal activities. As well as to search any and all subjects located inside of the aforementioned dwelling at the time of the execution of this warrant. (D. Exhibit 1, pp. 8-14, attachment 5)

On attachment 1, 3, 4, and all pages of attachment 5, each page is captioned

as follows:

In the matter of:

| | |
|---|---|
| William Lee Peoples | State of North Carolina |
| 61 East Marshall Street | Haywood County |
| Waynesville, N.C. 28786 | |
| | |
| White Male | |
| DOB: 10/11/1969 | |
| (D. Exhibit 1, pp. 3, 5, 6, & 7-14) | |

In the Application for the Search Warrant Trantham described the premises to be searched as: "In the following premises (give address and, if useful, describe premises) See Attachment 2." "Attachment 2" has a caption different than all other pages of the Application for the Search Warrant. This caption is entitled:

In the matter of:

Ruel Bruce Davis                                    State of North Carolina
27 Evans Drive                                      Haywood County
Waynesville, N.C. 28786

White Male
DOB: 1/10/1967
(D. Exhibit 1, p. 4, attachment 2)

Under the heading: "Premises To Be Searched" is the following description:

Leaving the Canton Police Department, turn left onto US 19. Travel to the second red light and turn left onto Blackwell Dr. Take the first right onto Beaverdam St which turns into Thompson St. 31 Thompson St will be above the North Canton Elementary School on the right side of the road. The house is white with a shingled roof. There is a partial attached garage and the house has crime scene tape around the front. The house is approximately 4 and 4/10 miles from the Canton Police Department. (D. Exhibit 1, p. 4, attachment 2)

Defendant is not Ruel Bruce Davis, and he does not reside at 27 Evans Drive, Waynesville, NC 28786. The address of 27 Evans Drive is located three miles from Defendant's residence, which is 61 East Marshall Street, Waynesville, NC. The directions in Attachment 2 of the Application for Search Warrant, however, would lead a person to an address of 31 Thompson Street, Waynesville, NC, which is

different from both the address of 27 Evans Drive and the address of Defendant's dwelling at 61 East Marshall Street.

Trantham testified that on September 8, 2010, he prepared the Application for Search Warrant and its attachments using a template, which he previously installed on his work computer. Another law enforcement officer gave him the template. Trantham testified that when he entered the information for search warrant into the template, he prepared a document captioned "Attachment 2." Attachment 2 contained the proper name and address of the Defendant and the correct directions to travel to Defendant's home, which Trantham knew was located at 61 East Marshall Street, Waynesville, NC. Trantham further testified that when he gathered the papers together that constituted the Application for Search Warrant, he picked up the wrong Attachment 2. Instead of taking the version with the Defendant's proper address and the directions to this address, he took a version of Attachment 2 that contained the name and description that was in the template. This was a mistake on the part of Trantham.

After preparing the Application and the Search Warrant, Trantham went before Superior Court Judge Bradley B. Letts, Senior Resident Superior Court Judge for the 30B Judicial District of North Carolina. Trantham swore to pages 3 through 14 of the Application for Search Warrant before Judge Letts and placed his signature on each

of those pages.  Judge Letts also signed pages 3 through 14 of the Application for Search Warrant  and signed the Search Warrant.  Both Trantham and Judge Letts signed the page denoted as Attachment  2 without noticing the incorrect caption and the incorrect directions for the place to be searched.  Trantham provided no other documents other than the actual Search Warrant and the pages that make up the Application for Search Warrant to Judge Letts for his consideration.  Trantham neither provided any sworn testimony to Judge Letts nor did he make any statement to Judge Letts about the contents of the documents.

The Search Warrant signed by Judge Letts has the following caption: "In The Matter Of: William Lee Peoples, 61 East Marshall St., Waynesville, NC."  The Search Warrant was issued by Judge Letts on September 8, 2010, at 5:12 p.m.

After obtaining the Search Warrant, Trantham went directly to the home of Defendant at 61 East Marshall Street, Waynesville, NC, and conducted a search of that dwelling.  Trantham testified that he went to the 61 East Marshall Street address because that is the place where Defendant sold marijuana to an informant Trantham was using.  Trantham also testified that he was involved in the investigation of Defendant from the beginning of the investigatory operation and knew the correct address and place where he intended to search - 61 East Marshall Street, Waynesville, NC.  This is the same address he  intended to seek permission from Judge Letts to

search. Trantham testified that he did not know there was an incorrect description of the premises to be searched in Attachment 2.

Among other items found at the home of Defendant at 61 East Marshall Street was 103 marijuana plants found in a basement grow room, equipment to operate an indoor plant growing facility, marijuana located in plastic bags, $10,693.00 in currency, and a firearm and ammunition. On September 10, 2010, Trantham prepared a document entitled "Inventory of Items Seized Pursuant to Search." (D. Exhibit 1, pp. 15-17) In that inventory, Trantham describes that he conducted a search of: "William Lee Peoples II, and all persons, vehicles and outbuildings 61 East Marshall Street, Waynesville, NC 28786" and describes that the search was made pursuant to "a search warrant issued by: Judge Letts."

As Trantham was preparing the inventory, however, he discovered that the Application for Search Warrant contained the incorrect Attachment 2. Trantham then found in his paper file the correct Attachment 2, which contained the name and address of Defendant and directions to Defendant's home at 61 East Marshall Street, Waynesville, NC. This was the document Trantham had prepared but mistakenly did not place in the materials delivered to Judge Letts. In spite of realizing his mistake, Trantham filed the original Application for Search Warrant, including the incorrect Attachment 2, with the Clerk of Superior Court of Haywood County. Trantham then telephoned DEA Agent Dan Guzo and explained the mistake he made in submitting

the Application for Search Warrant to Judge Letts. Trantham did not tell either the state district attorney or Judge Letts of the error.

## III.  Discussion

### A.  Standard Applicable to a Motion to Suppress

The Fourth Amendment to the Constitution of the United States provides:

Amendment IV.

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue but upon probable cause, supported by oath or affirmation and particularly describing the place to be searched and the persons or things to be seized.

The exclusionary rule provides that "evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure." United States v. Calandra, 414 U.S. 338, 347 (1974) Here, Defendant contends the Search Warrant that was issued does not comply with the Fourth Amendment requirement that the premises to be searched be described with particularity. "The particularity requirement prohibits general, exploratory searches." United States v. Owens, F.2d 462, 463 (4th Cir. 1988). As the United States Court of Appeals for the Fourth Circuit has explained:

A warrant meets the particularity requirement "if the description is such that the officer with a search warrant can, with reasonable effort, ascertain and identify the place intended." Steele v. United States, 267 U.S. 498, 503, 45 S. Ct. 414, 416, 69 L.Ed. 757 (1925). An erroneous

description in the warrant, however, does not necessarily invalidate a warrant and subsequent search. United States v. Ridinger, 805 F.2d 818, 819 (8th Cir.1986); United States v. Burke, 784 F.2d 1090, 1092 (11th Cir.1986). As the Supreme Court has recently stated, limitations on the execution of search warrants should be examined in light of "the need to allow some latitude for honest mistakes that are made by officers in [this] dangerous and difficult process." Maryland v. Garrison, 480 U.S. 79, 107 S. Ct. 1013, 1018, 94 L.Ed.2d 72, 82 (1987).

Id. at 463-464; see also United States v. Watts, 352 F. App'x 784, 785 (4thCir. 2009) (unpublished); United States v. Brooks, 294 F. App'x 71, 73 (4th Cir. 2008) (unpublished). The United States Court of Appeals for the Sixth Circuit has described the standard to be applied as follows:

The test for determining whether the description in the warrant is sufficient to satisfy the particularity requirement....[has] two components: (1) whether the place to be searched is described with sufficient particularity as to enable the executing officers to locate and identify the premises with reasonable effort; and (2) whether is reasonable probability that some other premises may be mistakenly searched.

United States v. Gahagan, 865 F.2d 1490, 1496-97 (6th Cir. 1989).

## B. Application of State or Federal Law

In Defendant's Motion to Suppress (#20) and at oral argument, Defendant argued that the Court should apply North Carolina state law, particularly Article 1, Section 20 of the Constitution of North Carolina , North Carolina Gen. Stat. § 15A-244, and the case law of the North Carolina appellate courts. Defendant's argument,

however, is foreclosed by the decision of the Fourth Circuit in <u>United States v. Clyburn</u>, 24 F.3d 613 (4th Cir. 1994). As the Court explained in <u>Clyburn</u>, "[t]he Fourth Amendment, not federal rules or state law, governs the admissibility of evidence obtained by state officers but ultimately used in federal prosecution." 24 F.3d at 616; <u>United States v. Clenney</u>, 631 F.3d 658, 667 (4th Cir. 2011); <u>United States v. Van Metre</u>, 150 F.3d 339, 347 (4th Cir. 1998). The Fourth Amendment and federal cases interpreting it are "the only proper standard for determining whether evidence seized by state officials pursuant to a state warrant is admissible in federal court." <u>Clyburn</u>, 24 F.3d at 616-17. Neither the Constitution of North Carolina nor state statutes have any bearing on whether the Court should suppress the evidence at issue. <u>Id.</u> at 616. Accordingly, the Court will apply federal, rather than North Carolina state law.

**C.    The Description of the Place to be Searched**

Defendant contends the evidence seized from the search of his dwelling should be suppressed because the search warrant was invalid due to the fact it contained an erroneous description of the premises to be searched. This issued was recently addressed in <u>United States v. May</u>, No. 5:08cr331, 2009 WL 928386 (E.D.N.C. Apr. 3, 2009) as follows:

> The Fourth Amendment to the Constitution requires search warrants to particularly describe the place to be searched and the items to be seized.

Andresen v. Maryland, 427 U.S. 463, 480, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976). A warrant meets the particularity requirement "if the description is such that the officer with a search warrant can, with reasonable effort, ascertain and identify the place intended." Steele v. United States, 267 U.S. 498, 503, 45 S.Ct. 414, 69 L.Ed. 757 (1925); United States v. Owens, 848 F.2d 462, 463 (4th Cir. 1988); see also United States v. Moore, 119 Fed. Appx. 438, 439 (4th Cir. 2004) (citing Owens). However, "[a]n erroneous description in the warrant....does not necessarily invalidate a warrant and subsequent search." Owens, 848 F.2d at 463; see United States v. Kurk, 149 F.3d 464, 465 (6th Cir. 1998) ("The test for determining whether a search warrant describes the premises to be searched with sufficient particularity 'is not whether the description is technically accurate in every detail'...."(quoting United States v. Prout, 526 F.2d 380, 387 (5th Cir. 1976) (citations omitted)). "[L]imitations on the execution of search warrants should be examined in light of 'the need to allow some latitude for honest mistakes that are made by officers in [this] dangerous and difficult process.' "Owens, 848 F.2d at 463-64 (quoting Maryland v. Garrison, 480 U.S. 79, 87, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987)). Moreover, where a portion of a warrant describes inaccurately the premises to be searched, but other portions described the premises with sufficient particularity, a search pursuant to the warrant is generally upheld. See Unites States v. Gitcho, 601 F.2d 369, 371 (8th Cir. 1979). In determining whether the particularity requirement is met, courts look to the probability that the description in the warrant may result in the search of the wrong location. *Id.* at 465; see Gitcho, 601 F.2d at 371 ("The test for determining the sufficiency of the description of the place to be searched is whether the place to be searched is described with sufficient particularity as to enable the executing officer to locate and identify the premises with reasonable effort, *and whether there is any reasonable probability that another premise might be mistakenly searched*." (emphasis added)).

"Evidence seized in violation of the particularity requirement is subject to suppression pursuant to the judicially created exclusionary rule." Owens, 848 F.2d at 463. However, in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the United States Supreme Court created a good faith exception to the exclusionary rule. The Court held that evidence seized in violation of the particularity requirement

need not be suppressed where the officer executing the warrant acted in good faith with objectively reasonable reliance on a facially valid warrant. <u>Leon</u>, 468 U.S. at 922.

As in <u>May</u>, the undersigned will first determine what materials accompanying the Search Warrant the Court may properly consider in determining the sufficiency and scope of the Search Warrant. In <u>United States v. Hurwitz</u>, 459 F.3d 463 (4th Cir. 2006), the Fourth Circuit held the particularity requirement of the Fourth Amendment may be satisfied by cross-reference in the search warrant to separate documents that identify the property in sufficient detail. The Court explained that:

> As a general rule, a supporting affidavit or document may be read together with (and considered a part of) a warrant that otherwise lacks sufficient particularity "if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant." <u>Groh</u>, 540 U.S. at 557-58, 124 S.Ct. 1284. In this circuit, however, it is sufficient *either* for the warrant to incorporate the supporting document by reference or for the supporting document to be attached to the warrant itself. See <u>Washington</u>, 852 F.2d at 805 (concluding that warrant was sufficiently particular where the warrant completely failed to refer to the supporting affidavit listing items to be seized but the affidavit was attached, and explaining that "[a]n affidavit may provide the necessary particularity for a warrant if it is either incorporated into or attached to the warrant") (emphasis added) (internal quotation marks omitted). At least one other circuit subscribed to this view. See <u>Baranski v. Fifteen Unknown ATF Agents</u>, 452 F.3d 433 (6th Cir. 2006) (en banc).

<u>Hurwitz</u>, 459 F.3d at 471.

In this case, the Search Warrant issued by Judge Letts incorporates by reference the Application for Search Warrant and the attachments to the document. The Search

Warrant issued contains the following language:

> To any officer with authority and jurisdiction to conduct the search authorized by this Search Warrant:
> I, the undersigned, find that there is probable cause to believe that the property and person described in the application on the reverse side and related to the commission of a crime is located as described in the application.
> You are commanded to search the premises, vehicle, person and other place or item described in the application for the property and person in question. If the property and/or person are found, make the seizure and keep the property subject to Court Order and process the person according to law.

The reverse side is entitled APPLICATION FOR SEARCH WARRANT. That document incorporated all of attachments 1 through 5 and particularly Attachment 2, which was to describe the premises to be searched. The APPLICATION FOR SEARCH WARRANT contains the following language:

> I, <u>Detective Tyler Trantham, Waynesville Police Department</u>, being duly sworn, request that the Court issue a warrant to search the person, place, vehicle, and other items described in this application and to find and seize the property and person described in this application. There is probable cause to believe that (*Describe property to be seized; or if search warrant is to be used for searching a place to serve an arrest warrant or other process, name person to be arrested*)
> <u>See Attachment 1</u>
> and is located (*Check appropriate box(es) and fill-in specified information*)
> ☒ in the following premises (*Give address and, if useful, describe premises*)
> <u>See Attachment 2</u>
> ☒ on the following person(s) (*give name(s) and, if useful, describe person(s)*)
> <u>See Attachment 3</u>

⊠ in the following vehicle(s) (*Describe vehicle(s)*)
<u>See Attachment 4</u>
The applicant swears to the following facts to establish probable cause
for the issuance of a search warrant:
<u>See Attachment 5</u>

It is clear that the Search Warrant incorporated by reference the

APPLICATION FOR SEARCH WARRANT and all attachments. It is not clear if the

supporting documents were attached to the warrant itself. Defendant's Exhibit 1

contained the "SEARCH WARRANT, the APPLICATION FOR SEARCH

WARRANT, the attachments, and the Inventory of Items Seized Pursuant to Search.

(Def.'s Exhibit 1 at pp. 1-17.) The Court does not recall any testimony concerning

whether Defendant was served with a copy of these documents at the time of the

execution of the Search Warrant. In any event, the Search Warrant did incorporate by

reference the Application and all attachments. The Court will consider all of these

documents in determining if the Search Warrant particularly described the premises

to be searched.

Defendant contends that the description of the premises to be searched, the

premises location described in Attachment 2, describes the location of a residence to

be searched that has no connection to defendant or the allegations regarding

Defendant's alleged activities contained in the Application for Search Warrant.

Defendant's contention is correct. Defendant further contends that as a result of the

fact that the description of the location of the premises to be searched is incorrect, he is entitled to have all evidence of the search of his home suppressed. This contention, however, is incorrect. In making this decision, the undersigned has considered: (1) whether the place to be searched is described in the Application for Search Warrant with sufficient particularity to enable the executing officer to locate and identify the premises with some reasonable effort; (2) there was no reasonable probability of a mistake being made and finding the actual premises which were searched; and (3) the officer acted in good faith.

First, the Court has considered all pages of the Search Warrant, Search Warrant Application, and the attachments. (Def.'s Exhibit 1 at pp. 1-14.) Defendant's name and the address of his dwelling house, 61 East Marshall Street, Waynesville, NC, appear in the caption of all pages except pages 2 and 4. Page 2 is the Application for Search Warrant and page 4 is the incorrect Attachment 2. (Def.'s Exhibit 1 at pp. 2 & 4.) Pages eight through fourteen contain paragraphs of the probable cause affidavit, which describe two separate purchases of marijuana from Defendant at the dwelling house located at 61 East Marshall Street (Def.'s Exhibit 1 at p. 8.) Page nine describes a contact being made by the same confidential informant with Defendant at "his residence at 61 East Marshall Street in Waynesville, NC." (Def's Exhibit 1 at p. 9.) Page eleven describes how that, within forty-eight hours of the presentation of the

Application for Search Warrant and the attachments to Judge Letts, that a confidential informant had made a purchase of marijuana from Defendant at "the residence located at 61 East Marshall Street in Waynesville, NC." (Def.'s Exhibit 1 at p. 11.) In this purchase there was an additional use of three surveillance teams, including five officers who followed the informant to the dwelling house located at 61 East Marshall Street, where the surveillance teams had audio contact with the informant and Defendant during this purchase. (Def.'s Exhibit 1 at p. 9.) Finally, the last page of the probable cause affidavit written by Trantham requests the following:

> It is respectfully requested that a search warrant be issued for the residence, vehicles out buildings, and curtilage of 61 East Marshall street, Waynesville, N.C. to recover and seize any and all controlled substances and items pertaining to illegal activities. As well as to search any and all subjects located inside of the aforementioned dwelling at the time of the execution of this warrant. (D. Exhibit 1, p. 14)

As stated in May, courts have addressed the issue of an incorrect address as follows:

> Courts have repeatedly held that an incorrect address, including an incorrect house number, does not invalidate a warrant where there is some other reasonably specific description of the property. See , *e.g.*, Moore, t119 Fed. Appx at 439 (wrong street); Durk, 149 F.3d at 465 (wrong house number); Gitcho, 601 F.2d at 370 (wrong building number); United States v. Shropshire, 498 F.2d 137, 142 (5th Cir. 1974) ("second trailer" wrongfully identified as third trailer); Hickman v. Marzec, Civ. Action Nos. 05-811-GMS, et al., 2008 WL 4279423, at 11 (D.Del. 18 Sept. 2008) (wrong city).

May, 2009 WL 928386, at *8.

*May* also addressed cases where a search warrant with an inadequate description may still be held to be valid if the search warrant describes the name of the occupant of the premises:

> Courts have held that a warrant which otherwise lacks an adequate description of the premises to be searched may still be valid where, as here, it specifies the name of the occupant of the premises. See, *e.g.*, Durk, 149 F.3d at 466 (warrant held adequate despite errors in description of house to be searched where it included name of the tenant in the house); United States v. DePugh, 452 F.2d 915, 920 (10th Cir. 1971) (warrant held not fatally invalid due to an inaccurate description of the land where *inter alia* house was located because the warrant named the owner of house to be searched and gave location of house with reference to town and highway); United States v. Hassell, 427 F.2d 348, 349 (6th Cir. 1970) (warrant held adequate despite inaccuracies in description of farm to be searched where *inter alia* it included name of occupant of farm); see also United States v. Bedford, 519 F.2d 650, 655 (3d Cir. 1975) (warrant to search address at which there were two apartments held valid where *inter alia* the warrant specified the occupant of the apartment to be searched); Moore, 461 F.2d at 1238 (same); Kenney v. Unied States, 157 F.2d 442, 442 (D.C.Cir. 1946) (same).

Id.

The Search Warrant and the Application to Search Warrant, and all pages attached thereto other than Attachment 2, contain not only the proper name of Defendant but also the address of his dwelling house - 61 East Marshall Street, Waynesville, NC.

An examination of all of the portions of the Search Warrant and Application to Search Warrant and attachments do not reveal any allegations or facts that would provide probable cause to search the residence described in Attachment 2 - a person

named Ruel Bruce Davis or the address of 31 Thompson St. All information in the other papers contained in Defendant's Exhibit 1 provide probable cause for the search of the dwelling house located at 61 East Marshall Street. The affidavit describes that residence as one which had recently been under surveillance for illicit drug activity. There is no evidence of drug or police activity concerning the location described in Attachment 2. The Search Warrant and Application for Search Warrant and the attachments which constitute Defendant's Exhibit 1 uniquely describe the dwelling house located at 61 East Marshall Street in Waynesville, NC. The premises that the officer wanted to search was described in a manner to enable any executing officer to locate and identify the premises with reasonable effort. See <u>Gahagan</u>, 865 F.2d at 1496-97.

Secondly, there was no reasonable probability of a mistake being made in locating the actual premises that were to be searched. The officer requesting the search warrant and the officer executing the search warrant were the same person: Det. Trantham. Trantham had been involved in the surveillance of the dwelling house located at 61 East Marshall Street and knew that was the premises he wanted to search. Courts recognize this is a factor in supporting the validity of the search warrant. <u>May</u>, 2009 WL 928386, at *10. Trantham testified he never intended to search any dwelling house except the dwelling house located at 61 East Marshall Street. The mistake in the description on Attachment 2 had no affect upon the search

of the correct dwelling house. Trantham went unerringly to 61 East Marshall Street. There was no probability of a search taking place at either of the addresses described in Attachment 2. In short, the officer in possession of the Search Warrant could reasonably ascertain and identify the intended place to be searched in spite of the facial defect in Attachment 2. See Owens, 848 F.2d at 463 (holding that facially deficient search warrant assigning the wrong apartment number to be searched did not invalidate the warrant and violate the Fourth Amendment's particularity requirement); Brooks, 294 F. App'x at 73 ("Even if the description of the place to be searched is mistaken, there is not Fourth Amendment violation when the officers executing the search reasonable believe that the warrant is sufficiently particular and that they are searching the correct location."); Watts, 352 F. App'x at 785 ("Moreover, even where a warrant contains a technical inaccuracy, a sufficient description of the premises, especially where the executing officer had knowledge of the particular place to be searched, will meet the Fourth Amendment's particularity requirement.").

Finally, the Government contends that even if the Search Warrant is lacking in particularity, the evidence found in the search of the dwelling house located at 61 East Marshall Street should not be excluded because the officers acted in good faith. See United States v. Leon, 468 U.S. 897 (1984). In United States v. Wilhelm, 80 F.3d 116 (4th Cir. 1996), the Fourth Circuit described this good faith exception:

In United States v. Leon, the Supreme Court held that evidence obtained

by "officers reasonably relying on a warrant issued by a detached and neutral magistrate" is admissible. 468 U.S. 897, 913, 104 S.Ct. 3405, 3415, 82 L.Ed. 2d 677 (1984). The officers-and the Court emphasized that "officers" should be read broadly to include those who obtain the warrant as well as those who conduct the search-must act based on an "objectively reasonable" reliance; "in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued." *Id*. at 922-23 & n. 24, 104 S.Ct. at 3420 & n. 24. In footnote 24, the Court noted that it's <u>Leon</u> opinion should not be read to suggest that "an officer could obtain a warrant on the basis of a 'bare bones' affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search." 468 U.S. at 923 n. 24, 104 S.Ct. at 3420 n. 24.

The good-faith exception does not apply in four situations: first, when the warrant is based on an affidavit containing "knowing or reckless falsity"; second, when the magistrate has simply acted as a "rubber stamp" for the police; third, when the affidavit does not "provide the magistrate with a substantial basis for determining the existence of probable cause"; and finally, when the warrant is so "facially deficient" that an officer could not reasonably rely on it. *Id*. at 923, 104 S.Ct. at 3420.

<u>Wilhelm</u>, 80 F.3d at 121.

In this case there are no allegations that the Search Warrant was issued based upon a knowingly or recklessly false affidavit. Judge Letts did not act as a rubber stamp for Trantham. The affidavit describes two surveilled and recorded drug purchases made by informants from defendant in the dwelling house located at 61 East Marshall Street. This information provided more than ample probable cause for the issuance of the Search Warrant. Finally, the Court cannot find the Search Warrant is so facially defective that Trantham could not reasonably rely upon it. Trantham requested specific permission to search the dwelling house located at 61 East Marshall

Street.  (Def's Exhibit 1 at p. 14.)  This is the address of the dwelling house that is described in every page of Defendant's Exhibit 1, but Attachment 2.  Trantham never had any intention to go to any other place to search.  The undersigned finds that the warrant is not so facially deficient that it could not be relied upon by Trantham.

For the foregoing reasons, the undersigned recommends to the District Court that the "Motion to Suppress Evidence" (#20) of Defendant be denied.

## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that Defendant's Motion to Suppress Evidence (#20) be **DENIED.**

## <u>Time for Objections</u>

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen** (**14**) days of service of same.  **Responses to the objections must be filed within fourteen (14) days of service of the objections.**  Failure to file objections to this Memorandum and Recommendation with the district court will

preclude the parties from raising such objections on appeal.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985), <u>reh'g</u> <u>denied</u>, 474 U.S. 1111 (1986); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir.), <u>cert</u>. <u>denied</u>, 467 U.S. 1208 (1984).

Signed: June 9, 2011

Dennis L. Howell
United States Magistrate Judge